UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>KSENIIA PETROVA,<br>    Defendant | **FILED UNDER SEAL**<br><br>CRIMINAL No. 25-5150-JGD |

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A CRIMINAL COMPLAINT

### Introduction and Agent Background

Brian M. Goldsworthy, being duly sworn, depose and state as follows:

1. I am presently employed as a Special Agent with U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI), assigned to the Boston Field Office. I have been an HSI Special Agent for approximately 18 years. As a Special Agent, I am authorized to investigate violations of United States laws and to execute warrants issued under the authority of the United States.

2. As a Special Agent with HSI, I have received specialized training and have personal experience conducting investigations in the areas of technology transfer, import/export violations, narcotics, and smuggling. I have received specialized training on how to conduct investigations involving the illegal importation/exportation of merchandise, weapons, technology, and other controlled commodities. I have also received specialized training on the federal criminal statutes that regulate and, in certain instances, prohibit the import and export of U.S. controlled commodities, including weapons systems, military equipment, commercial merchandise, technology, and other controlled items.

3. I submit this affidavit in support of a criminal complaint charging Kseniia PETROVA (hereinafter, "PETROVA"), born in 1994, with Smuggling Goods into the United States in violation of 18 U.S.C. § 545 (the "Target Offense"). As set forth below, there is probable cause to believe that on or about February 16, 2025, PETROVA, in the District of Massachusetts, fraudulently and knowingly imported and brought into the United States merchandise contrary to law to wit, biological specimens, including multiple clawed frog (*Xenopus tropicalis* and *Xenopus laevis*) embryos and embryonic samples in paraffin well stages and on mounted dyed slides(hereinafter, "the biological items").[1]

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other investigators and witnesses. This affidavit is submitted for the limited purpose of establishing probable cause to believe that PETROVA has committed the Target Offense. Accordingly, I have not included each and every fact known to me and other law enforcement officers involved in this investigation. I have set forth only the facts that I believe are needed to establish the requisite probable cause.

## Relevant Legal Authority

5. It is a violation of Title 18, United States Code, Section 545 for any person to fraudulently and knowingly import and bring into the United States, any merchandise contrary to law; in this case, undeclared and unpermitted biological specimens.[2]

---

[1] Xenopus is a genus of aquatic frogs that are non-native to the United States. In lay terms, it is referred to as the clawed frog.

[2] See 19 C.F.R. Part 148.11 – Personal Declarations and Exemptions which requires that "[a]ll articles brought into the United States by any individual must be declared to a CBP officer at the port of first arrival in the United States, on a conveyance en route to the United States on which a CBP officer is assigned for that purpose, or at a preclearance office in a foreign country where a United States CBP officer is stationed for that purpose.

**Facts Supporting Probable Cause**

6. On or about February 16, 2025, PETROVA, a Russian citizen, arrived at Logan International Airport ("Logan"), in Boston, Massachusetts, via an inbound flight from Paris, France.

7. Upon her arrival at Logan, PETROVA's checked luggage—a duffle bag—was placed on a baggage carousel. There, a Customs and Border Protection ("CBP") canine alerted his handler to PETROVA's bag. Per protocol, the CBP officer removed the bag from the carousel and brought it to an agricultural secondary inspection area for further screening. There, a CBP officer inspected the contents of the bag and discovered the biological items.

8. PETROVA was asked to present herself at the secondary inspection area. She was wearing a backpack and carrying a plastic bag. When questioned about her luggage, PETROVA denied carrying any biological material. When the CBP officer asked her again, PETROVA identified the plastic bag she was carrying as having biological material. An inspection of the bag revealed a foam box containing frog embryos in microcentrifuges, as well as embryo slides. A CBP officer interviewed PETROVA under oath and conducted a manual review of her cell phone. PETROVA admitted that the items in her duffle bag and in the plastic bag were biological specimens. PETROVA was asked if she knew that she was supposed to declare biological material when entering the United States. After a long pause, she answered she was not sure. The CBP officer then confronted PETROVA with a text message on her phone from an individual who she identified as her colleague at a Boston-area medical school, where she is currently a research assistant. The individual wrote, "if you bring samples or antibody back,

---

See also 9 C.F.R. Part 104 (Permits for Biological Products) which prohibits any biological product be permitted to be brought into the United States unless a permit has been issued for such product.

make sure you get the permission etc. Like that link I sent to leon-/group chat about frog embryos because TSA went through my bags at customs in Boston." When asked again whether she knew she was supposed to declare the items, she responded that she "was not sure about embryos specifically"

9.    Another text message on PETROVA's phone contained the following question from her medical school colleague: "What is your plan to pass the American [referred to as US in PETROVA's interview] Customs with samples? This is the most delicate place of the trajectory."

10.   The CBP officer confronted PETROVA with another text message between her and another individual who she identified as her principal investigator in which she was asked by this individual: "what is your plan for getting through customs with samples?" To that question, PETROVA replied, "No plan yet. I won't be able to swallow them."

11.   PETROVA told CBP agents that she was educated in Russia and worked at the Moscow Center for Genetics as a bioinformatician of genetic disorders from 2016 to 2023. When asked if this was a Russian government institution, she replied that about half of the scientists worked for the Russian government and the other half for hospitals. She also stated that she was most recently employed by the Institute of Genetic Biology in Moscow from 2023 to 2024.

12.   The CBP officer advised PETROVA that she was ineligible for entry into the United States. The officer asked if she wished to willingly withdraw her application for admission to the United States at this time. PETROVA responded yes. PETROVA was advised that her visa would be canceled, and she was asked if there was anything she would like to add. PETROVA responded "no." When she was asked if she would like the Russian

4

government to be notified that she was in the United States, she claimed that she was in fear of going back to Russia. She claimed she had protested the Russian Federation. She provided no other details.

13. The biological items found on PETROVA's possession and in her checked bag were examined by the National Bioforensic Analysis Center (NBFAC) and it was determined items contained clawed frog (*Xenopus tropicalis* and *Xenopus laevis*) embryos and embryonic samples, among other things.

## CONCLUSION

14. Based upon the information described herein, there is probable cause to believe that, on or about February 16, 2025, Kseniia PETROVA knowingly and willfully, with the intent to defraud the United States, smuggled, and clandestinely introduced, and attempted to smuggle or clandestinely introduce into the United States, merchandise, specifically biological items, which should have been invoiced, all in violation of 18 U.S.C. § 545.

The requested Complaint and accompanying arrest warrant should issue.

*Brian Goldsworthy*
Brian Goldsworthy
Special Agent
Homeland Security Investigations

Sworn and subscribed to me telephonically on May __, 2025.   **May 12, 2025**

*Judith G. Dein*
HON. JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE